IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | | |
|---|---|---|
| ASHLEY BALLARD | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.  **CV222-054** |
| | ) | |
| FKJC ONE, LLC (dba) | ) | |
| COUNTRY LAKES | ) | |
| APARTMENTS, | ) | |
| | ) | |
| | ) | |
| NATALIE GRACE FRIEND, | ) | |
| | ) | |
| | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendants. | ) | |
| | ) | |

## **COMPLAINT**

Plaintiff, Ms. Ashley Ballard files this complaint against Defendants seeking redress for violations of the Fair Housing Act, 42 U.S.C. § 3601 and 42 U.S.C. § 1981.

## **INTRODUCTION**

Ms. Ashley Ballard (hereinafter the "Plaintiff" or "Ms. Ballard") moved into the Country Lakes Apartments located at 94 Stephanie Avenue, Kingsland,

Georgia 31548 on April 7, 2022, with her two children and two dogs.  On April 10, 2022, Ms. Natalie Friend, a white female and Vice President of Country Lakes Apartments, learned that Ms. Ballard was African American, in which she sarcastically responded saying, "Oh, Great!" Unbeknownst to Ms. Ballard, Vice President Friend contacted the property manager with false allegations that Ms. Ballard's dogs were aggressive and barking. In an effort to support her discriminatory motives, Defendants began stalking Ms. Ballard during the late evening hours, snooping around in her backyard after 10 PM—seeking to obtain evidence that Ms. Ballard's dogs were "aggressive."  Because of Defendants repeated discriminatory behaviors, Ms. Ballard was required to obtain a criminal trespass order to protect herself and her two minor children from Defendants' trespassing behaviors.

Without legal basis and after Vice President Friend had already approved Ms. Ballard for the unit, Vice President Friend also inquired about the income of Ms. Ballard; once she found Ms. Ballard's income she asked, "Why would you move her in when most of her income is child support"?  To advance her discriminatory animus toward Ms. Ballard, on multiple occasions, Vice President Friend instructed the property manager to terminate Ms. Ballard's lease early or evict her, without lawful basis.  Notably, other white residents have not been

subjected to similar harassment and illegal surveillance, despite repeated and ongoing pet violations within the Country Lakes Apartments community.

Defendants have interfered with Plaintiff's federal rights to lease property without unlawful racial discrimination—resulting in stress, pain and suffering, and interference with her property use rights.  Ms. Ballard seeks pecuniary, equitable, and compensatory damages to make her whole.

## PARTIES

1.

Ms. Ashley Ballard is an adult African American female.  At all times relevant to this action, Ms. Ballard has been and continues to be a resident of Camden County. Ms. Ballard submits to the jurisdiction of this Court.

2.

FKJC ONE, LLC (dba) Country Lakes Apartments (hereinafter "Country Lakes Apartments" or "Landlord") is a foreign limited liability company.  The corporation's principal place of business is located at 4901 26th Street West, Suite B, Bradenton, Florida, 34207, and its Registered Agent, Stephen Kinney's physical address is 1815 Osborne Road, St. Marys, Georgia, 31558 in Camden County. FKJC is the lessor and owner of the real property that is the subject of this lawsuit, as evidenced by the residential lease contract.  Country Lakes Apartments

employees, agents, and assigns are responsible for the discriminatory acts alleged by Plaintiff.

3.

Ms. Natalie Friend is a white adult female.  Ms. Friend is one of the Vice Presidents of Country Lakes Apartments. As the Vice President, Ms. Friend is empowered to make decisions relating to the creation, management, and enforcement of policies of Country Lakes Apartments, including the termination of lease agreements and enforcement of pet policies. At all times relevant to this action, Vice President Friend wielded her authority as a Vice President to intentionally discriminate against Ms. Ballard.

## JURISDICTION AND VENUE

4.

This action arises under laws of the United States, including Plaintiff's claims against Defendants for violations of the Fair Housing Act, a federal civil rights statute. This Court has authority to award costs and attorneys' fees under 42 U.S.C. § 1988 and 42 U.S.C. § 3613.

5.

Venue is proper in the Southern District of Georgia pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2).  Plaintiff has residence in the Southern District of Georgia,

and all the events and omissions giving rise to the claims in this action occurred in this district.

## FACTS

6.

Ms. Ballard is an African American woman.

7.

Ms. Ballard moved to Country Lakes Apartments for the sole purpose of saving money as a single mom and to give her children the opportunity to play in a yard.

8.

Ms. Ballard lives at Country Lakes Apartments with her two minor children and her two dogs.

9.

Ms. Ballard moved into her unit at the Country Lakes Apartments on April 7, 2022.

10.

Ms. Ballard signed a 12-month residential lease (hereinafter "lease") with Country Lake Apartments to lease a duplex.  The term began on April 8, 2022, and ends on March 31, 2023.

11.

Because Ms. Ballard lives in a duplex, she is not in an "upstairs" unit.  Ms. Ballard only has one neighbor adjacent to her home.

12.

Ms. Ballard checked "Yes" and executed the Landlord's pet agreement, as required by Section 23 of the Resident Lease.

13.

On the Pet Agreement, Ms. Ballard indicated that she had two dogs, Pebble, a Beauceron, and Pistol, a Labrador Retriever, both weighing 60lbs.

14.

Section 23 of the Resident Lease, labeled "Pets" states, "Pets shall not be allowed without prior written consent of the Lessor. A PET AGREEMENT must be signed by both lessee and lessor and shall become part of lease. Check below and attach pe agreement if yes:"

15.

Ms. Hayli Phillips was the agent and property manager of the Landlord from April 7, 2022 - April 27, 2022.

16.

During her employment term, Ms. Phillips was the authorized signer for the Landlord on the controlling Lease Agreement.

17.

The Pet Agreement included rules that apply to specific types of pets.

18.

Regarding dogs, the rules are as follows:

"No puppies (four (4) months or less) are allowed. No adult dogs, fully grown, will exceed seventy (70) pounds. In an apartment, two (2) dogs will be allowed as long as they do not exceed the seventy (70) pound weight limit or limitation on weight for upstairs."

19.

Ms. Vice President Friend sent a text to Property Manager Phillips on April 10, 2022, informing her that Ms. Ballard had aggressive dogs and were barking.

20.

Vice President Friend texted Property Manager Phillips, "no more dogs in the complex!"

21.

Vice President Friend inquired about Ms. Ballard's income and when given the amount by Property Manager Phillips, Vice President Friend replied, "Probably all in child support."

22.

After her text conversation with Vice President Friend, Property Manager Phillips called Ms. Ballard regarding the allegations of Vice President Friend's complaint.

23.

Ms. Ballard informed Property Manager Phillips that she was home all day getting her hair braided. Ms. Ballard denied that her dogs were making any noise, as described by Vice President Friend.

24.

On the evening on April 10, 2022, Ms. Ballard left the home to stay with a friend due to a roach infestation in her unit.

25.

Ms. Ballard's sister completed a courtesy check on the unit to assuage Property Manager Phillips' concerns.

26.

Ms. Ballard's sister reported that her dogs were quiet and calm.

27.

Property Manager Phillips has met Ms. Ballard's dogs and found them to be very friendly and well-behaved.

28.

On April 11, 2022, Vice President Friend called Property Manager Phillips and asked her "Ms. Ballard's skin color."

29.

After Ms. Phillips stated Ms. Ballard's skin color, Ms. Friend replied "Oh Great!"

30.

Vice President Friend instructed Property Manager Phillips not to take Ms.

Ballard's money, although Ms. Ballard offered to make payment.

31.

During the week of April 11, 2022, Vice President Friend harassed Ms. Ballard,

and trespassed onto her leased property.

32.

Property Manager Phillips told Vice President Friend that if she wanted to evict

Ms. Ballard due to her dogs, she would need to evict the 30 other tenants, who are

white, but Vice President Friend responded, "I'm not worried about them, I'm

worried about her."

33.

Vice President Friend threatened to fire Property Manager Phillips, if she did not

get Ms. Ballard out of the complex.

34.

Ms. Phillips attempted to persuade Vice President Friend by sharing positive

experiences with Ms. Ballard, but Vice President Friend refused to reconsider.

35.

Vice President Friend had a problem with Ms. Ballard because of the color of her skin.

36.

On April 13, 2022, Vice President Friend told Property Manager Phillips that she was walking her dogs the previous night on April 12, 2022 and heard Ms. Ballard's dogs barking.

37.

When approached by Property Manager Phillips, Ms. Ballard informed Property Manager Phillips that Vice President Friend's allegations were untrue.

38.

Upon review of her ring doorbell camera for April 12, 2022, the camera did not reveal Ms. Friend walking.

39.

Upon review of her ring doorbell camera for April 12, 2022, the camera did not reveal Ms. Ballard's dogs barking.

40.

On April 14, 2022, Ms. Ballard went to the office and reviewed the April 12, 2022, ring doorbell video footage with Property Manager Phillips.

41.

Upon information and belief, Vice President Friend lied about hearing Ms. Ballard's dogs barking on April 12, 2022, to further support her discriminatory motive and aims to terminate Ms. Ballard's lease early.

42.

Vice President Friend became upset when she found out that Ms. Ballard had reviewed the ring doorbell and the evidence did not support Vice President Friend's version of the story.

43.

In retaliation, on April 14, 2022, Vice President Friend told Property Manager Phillips that Ms. Ballard needed to provide vet documentation showing that her dogs were not "mixed breeds."

44.

The lease agreement between Plaintiff and Defendant has no prohibition against "mixed breeds."

45.

To comply with Vice President Friend's request, Ms. Ballard sent Property Manager Phillips the paperwork requested from VIP Pet Care.

46.

The paperwork provided by Ms. Ballard noted: Dog number one listed as a Beauceron (60lbs.) and Dog number two listed as a (Labrador Retriever) also (60lbs).

47.

Contrary to the position taken by Vice President Friend, Property Manager Phillips told Ms. Ballard that her dogs were not restricted breeds, and both her dogs were under the 70 lbs. requirement for the community.

48.

Vice President Friend insisted that Ms. Ballard's dog did not meet the community's requirements.

49.

Vice President Friend invented a new dog policy—not reflected in the residential lease—for Ms. Ballard.

50.

Vice President Friend said that Ms. Ballard's dogs could not exceed 70 lbs. combined.

51.

The Pet Agreement, within the controlling lease, has no requirement that the maximum weight for multiple dogs be less than 70 pounds combined.

52.

Vice President Friend texted Property Manager Phillips, "She can leave now with her security deposit we can go to court, or she can leave in 6 months with a non-renewal…"

53.

On the night of April 15, 2022, at approximately 9:30 PM, Vice President Friend walked around the perimeter of Ms. Ballard's duplex.

54.

Vice President Friend leaves temporarily and then returns with an unknown white male.

55.

In fear for her safety, Ms. Ballard calls the Camden County Sheriff's Office to report the harassment and trespassing behaviors of Vice President Friend.

56.

Thereafter the harassment continued when Vice President Friend repeatedly trespassed very close Ms. Ballard's porch, in her back yard and back windows, for the next several days.

57.

On April 16, 2022, Jeffrey Chew, an agent of the Landlord, and Vice President Friend did a slow drive by Ms. Ballard's home and honked the horn to provoke her dogs to bark. Ms. Ballard's dogs never barked.

58.

The couple drove back-and-forth repeatedly in front of Ms. Ballard's to intimidate Ms. Ballard and to agitate her dogs.

59.

On April 17, 2022, while celebrating Easter with her children at her sister's home, Ms. Ballard received a notification on her ring doorbell.

60.

Upon arriving at her home, Ms. Ballard witnessed Vice President Friend walking in Ms. Ballard's front yard – near her front porch.

61.

Ms. Ballard asked Vice President Friend why she kept stalking and harassing her. Vice President Friend responded, "Oh stop it, this is my place of business, and your dogs are frightening."

62.

On the same day, Ms. Ballard then called the Sheriff's Office to report Vice President Friend's discriminatory behaviors.

63.

Ms. Suzan McKenna, former property manager, told Ms. Ballard that Vice President Friend had a history of evicting black people without cause.

64.

Ms. Ballard also received a text message from Ms. McKenna stating that Vice President Friend specifically ordered her to "whitewash" the property.

65.

Ms. McKenna was terminated from her employment because Ms. McKenna would not "whitewash" the property as directed by Vice President Friend.

66.

On April 18, 2022, Property Manager Phillips, shared with Ms. Ballard that Mr. Jeffery Chew, told her that he wanted her to have "protection" and that he was moving Officer David King next-door to Vice President Friend.

67.

Officer King is a close friend of Vice President Friend.

68.

For the third time, on April 19, 2022, Ms. Ballard called Camden County Sheriff's Office against Vice President Friend for criminal trespassing.

69.

Camden County Sheriff's Office gave Vice President Friend a warning for a criminal trespass and was told that her behaviors toward Ms. Ballard were discriminatory.

70.

Camden County Sheriff's Office notified the Landlord about Vice President Friend's behaviors, but he informed the Sheriff that Vice President Friend could do what she wants.

71.

Since Ms. Ballard's move in on April 7, 2022, she has had six officers to her place of residence as a result of the discriminatory actions by Vice President Friend.

72.

On May 11, 2022, Ms. Ballard requested and received approval to have her boyfriend, a white male, added to her lease as an occupant.

73.

Ms. Ballard's boyfriend filled out an application and passed the background check.

74.

Ms. Ballard then went to the office to retrieve the paperwork to sign for him to be added to her application but was told by Mr. Chew, that her lease had been 'lost'.

75.

Upon information and belief, Mr. Chew is purposefully delaying the lease modification process, after receiving a spoliation letter from Ms. Ballard's attorney concerning the allegations of this lawsuit.

76.

Since mid-May 2022, Vice President Natalie Friend constantly asks the maintenance worker whether he has heard Ms. Ballard's dogs barking.  The maintenance man repeatedly tells Vice President Friend, 'no.'

77.

Upon information and belief, Vice President Friend continues to try to establish a 'paper trail' for her discriminatory aims to evict Ms. Ballard because she is black.

78.

As of May 24, 2022, Ms. Ballard's lease remains 'misplaced.'

79.

Defendants have applied the pet policy in a discriminatory manner.

80.

For example, Property Manager Phillips recalls that white tenants had two German Shepherds who ripped up the carpet, did not pay the pet deposit, and did not execute a pet addendum.

81.

These white tenants were not harassed, not pushed out, or threatened with evictions.

82.

Furthermore, Defendants have allowed restricted breeds in the complex that were visible to Vice President Friend, but Vice President Friend did not enforce the pet policies against white tenants in a similar fashion.

83.

Ms. Ballard's next-door neighbor, Sabrina Irving, provided a written statement saying that she has not had any complaints with Ms. Ballard's dogs.

84.

White women in the apartment complex with more aggressive dogs have not been subjected to the vitriol and discrimination that Ms. Ballard has had to endure.

85.

Defendants have no evidence that Ms. Ballard has violated the pet policies of the Country Lakes Apartment community, but they continue to harass Ms. Ballard— even after being advised by law enforcement to cease their discriminatory behaviors.

86.

Ms. Ballard has begun seeing a psychiatrist to manage the anxiety and stress of her ongoing discriminatory interactions with Defendants.

**COUNT I: FAIR HOUSING ACT VIOLATION BASED ON RACE**
*(Plaintiff Against FKJC ONE, LLC (dba) Country Lakes Apartments and Natalie Friend)*

87.

Plaintiff reinstates and reincorporates P1—P86 stated above.

88.

Ms. Ballard is within the protected classification of race covered under the Fair Housing Act, as a black woman.

89.

Ms. Ballard was intentionally and with malice aforethought denied the opportunity to participate in the terms, conditions, and privileges granted to renters of the Country Lakes Apartment community because of her race.

90.

Ms. Ballard was intentionally and with malice aforethought denied the provision of services in connection with lessees of the Country Lakes Apartment because of her race.

91.

Vice President Friend, by and through her discriminatory scheme, intentionally interfered with Ms. Ballard's rights because she didn't want a black woman leasing the unit.

92.

Vice President Friend purposefully and intentionally harassed, and criminally trespassed onto Ms. Ballard's leased premises because of Ms. Ballard's blackness.

93.

Vice President Friend's motivations for interfering and harassing Ms. Ballard are rooted in racial animus and racial hierarchies, suggesting that black women cannot make certain incomes.

94.

Jeffrey Chew, as an agent of Landlord, assisted Vice President Friend in her discriminatory scheme by driving by Ms. Ballard's home to intimidate her and provoke her dogs.

95.

Jeffrey Chew, as an agent of Landlord, assisted Vice President Friend in her discriminatory scheme by refusing to allow Ms. Ballard to amend her leasing contract after engaging in protected activity.

96.

Jeffrey Chew, as an agent of Landlord, assisted Vice President Friend in her discriminatory scheme by moving a police officer next door to Ms. Ballard to intimidate and scare her based on stereotypical assertions connecting blackness to criminality.

97.

Jeffrey Chew, as an agent of Landlord, assisted Vice President Friend in her

discriminatory scheme by repeatedly parking in Ms. Ballard's parking spot to

intimidate her, after engaging in protected activity.

98.

Defendants purposefully interfered with Ms. Ballard's federal civil rights to be free

from discriminatory terms, conditions, and privileges of leasing based on her

identification as a black woman.

99.

Country Lakes Apartments, by and through the acts of its agents and employees,

have purposefully and intentionally co-signed in the discriminatory application of

the pet policy against Ms. Ballard.

100.

Defendants have not denied white tenants within the Country Lakes Apartments

community the ability to own dogs, in compliance with a pet addendum.

101.

Defendants have not invented new pet policies to wield against white tenants

within the Country Lakes Apartments community, to deny them access to have

pets in their homes.

102.

Defendants' discriminatory actions are a violation of the Fair Housing Act, 42

U.S.C. § 3604(b).

103.

As a result of the unlawful actions of Defendants, Ms. Ballard has suffered loss of income, emotional pain, suffering, mental anguish, attorney's fees, and other non-pecuniary losses.

**COUNT II: SECTION 1981 RACIAL DISCRIMINATION IN THE PERFORMANCE OF CONTRACT**

*(Plaintiff Against FKJC ONE, LLC (dba) Country Lakes Apartments and Natalie Friend)*

104.

Plaintiff reinstates and reincorporates P1—P86 stated above.

105.

Plaintiff signed a residential lease agreement with Landlord in April 2022.

106.

Pursuant to the executed pet addendum, Ms. Ballard is empowered to own 2 pets, each weighing less than 70 pounds.

107.

Pursuant to P6 of the lease, Ms. Ballard is entitled to quiet enjoyment of the leased premises.

108.

Pursuant to P19 of the lease, the Landlord is empowered to conduct inspections at "reasonable times."

109.

As a tenant within the Country Lake Apartments community, Ms. Ballard has the right to enjoy "all benefits, privileges, terms, and conditions of the contractual relationship" including the right to own pets on a non-discriminatory basis.

110.

As a tenant within the Country Lake Apartments community, Ms. Ballard has the right to enjoy "all benefits, privileges, terms, and conditions of the contractual relationship" including the right to quiet enjoyment without harassment on a non-discriminatory basis.

111.

As a tenant within the Country Lake Apartments community, Ms. Ballard has the right to enjoy "all benefits, privileges, terms, and conditions of the contractual relationship" including the right to have inspections on a non-discriminatory basis.

112.

Defendant Landlord had knowledge and notice of Vice President Friend's discriminatory motive and actions and intentionally failed to intervene to prevent ongoing discriminatory impact to Ms. Ballard.

113.

Defendant Friend purposefully, unlawfully, and with malice aforethought, discriminated against Ms. Ballard in the performance of the terms and conditions of the landlord-tenant relationship by denying her the opportunity to own pets because of her blackness.

114.

Defendants denied Ms. Ballard the same right to make and enforce employment contracts, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, as described above and to be further proved at trial, because of her race, in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981.

115.

As a result of the unlawful actions of Defendants, Ms. Ballard has suffered loss of income, emotional pain, suffering, mental anguish, attorney's fees, and other non-pecuniary losses.

116.

Based on all the facts incorporated to support this Count, Plaintiff has demonstrated that Defendants violated Ms. Ballard's Section 1981 rights by subjecting her to a discriminatory scheme.

**COUNT III: ATTORNEY'S FEES**

*(Plaintiff Against FKJC ONE, LLC (dba) Country Lakes Apartments and Natalie Friend)*

117.

Based on the facts alleged in this Complaint, Plaintiff is entitled to attorney's fees against Defendants under 42 U.S.C. § 1988(b), 42 U.S.C. § 3613, and all applicable laws.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays this Court:

a) That process issue and service be had on each Defendant;

b) That a jury trial be had on all issues so triable;

c) That Plaintiff be awarded all costs and other expenses in an amount to be determined at trial, including attorney's fees;

d) That Plaintiff has judgment against Defendants for punitive damages;

e) That this Court grant compensatory and equitable relief to Plaintiff;

f) That Plaintiff receives such other and further relief as this Court deems just and proper.


DATE: June 13, 2022

Respectfully submitted,


/s/ Angelik Edmonds
Angelik Edmonds
Attorney for Plaintiff
GA Bar: 650757
Edmonds Law Office of Civil Rights LLC

135 Auburn Avenue NE, Suite B
Atlanta, Georgia 30303
O: 678-404-1239
F: +1 678-623-9090
E: angie@aedmondslaw.com